## BRITT v. TRAILMOBILE CO.

## MAPPES v. TRAILMOBILE CO.

### Nos. 10892, 10893.

United States Court of Appeals
Sixth Circuit.

Jan. 24, 1950.

William A. Dammarell, Cincinnati, Ohio (Ray J. O'Donnell, on the brief), for appellants.

Philip J. Schneider, Cincinnati, Ohio (Waite, Schindel & Bayless, Cincinnati, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN and McALLISTER, Circuit Judges.

SIMONS, Circuit Judge.

The appeals are added steps in the litigation by which the Trailmobile Company and the veteran employees of the former Highland Body Manufacturing Company, now merged with it, have been seeking to ascertain their respective rights and obligations under § 8(c) of the Selective Training and Service Act of 1940, 50 U.S. C.A.Appendix, § 308(c). The effort of this court to bring clarity out of confusion began with Trailmobile Co. v. Whirls, 6 Cir., 154 F.2d 866. Whirls had been an employee of the Highland Company, a wholly owned subsidiary of Trailmobile, dating his seniority from his employment in February, 1935. He entered the military service on October 23, 1942, at a time when his employment contract provided for seniority to be determined from the last date of hiring upon a departmental basis. Upon his discharge from the Army he was reemployed in his former capacity. Thereafter, Trailmobile absorbed the Highland Company and assumed all of its obligations, effective January 1, 1944. The 100 employees of Highland were merged with the 1,000 employees of Trailmobile into a single labor group. Originally, as separate units, they had been affiliated with the A. F. of L., but after the consolidation the employees selected the C. I. O. as its collective bargaining agent to negotiate an agreement with the Company for the benefit of all of its employees. The contract, consummated in July, 1944, fixed the seniority rights of the former employees of Highland as of January 1, 1944, without regard to date of employment, while retaining the employment date as a seniority basis for the original employees of Trailmobile.

We affirmed a judgment, D.C., 64 F.Supp. 713, directing the Trailmobile Company to reinstate the seniority of Whirls as of his employment date. We rejected the contention that the Highland employees were new employees of Trailmobile because of the separate corporate entities of the employers, held that an employer may not by contract with a new collective bargaining agency whittle down the statutory rights of an employee to seniority, denied that Hess v. Trailer Company of America, 17 Ohio Supp. 39, is available to the appellee under the doctrine of res adjudicata where decision is governed by an Act of Congress and does not pertain to general common law, and considered the seniority status of Whirls guaranteed by the Selective Training and Service Act as long as the Act remains in effect and Whirls remains in the service of the Company.

The Supreme Court reversed. Trailmobile Co. v. Whirls, 331 U.S. 40, 67 S.Ct. 982, 91 L.Ed. 1328. It considered that we had reached a conclusion contrary to that later reached in Fishgold v. Sullivan Dry Dock and Repair Corp., 328 U.S. 275, 66 S.Ct. 1105, 90 L.Ed. 1230, 167 A.L.R. 110, had held the reemployed veteran entitled to "super-seniority" for one year following his reemployment and a preferred status thereafter, found it unnecessary to pass upon various aspects of the case, including the question of res adjudicata and that of unjust discrimination. It held only that so much of the protection afforded a veteran by § 8 ends as would give the reemployed veteran a preferred standing over employees not veterans having identical seniority rights as of the time of his restoration. It expressly reserved decision upon all other aspects of the case.

While the Whirls case was pending upon appeal Trailmobile, learning that the United States Attorney was preparing many suits for separate adjudication of seniority rights, filed a complaint for declaratory judgment in the District Court for the Southern District of Ohio. This was a class suit in which it was impractical to name all of the parties in the class as defendants, so there was appended to the complaint an exhibit containing the names of all employees. The complaint prayed that their seniority be fixed as provided by the contract of June 22, 1944, with the C. I. O. The district court dismissed the action, 67 F.Supp. 53, whereupon Trailmobile appealed. Meanwhile, the Supreme Court decided the Whirls case. Trailmobile, being in doubt as to whether that case decided all issues presented in its declaratory judgment case, urged that its appeal be determined on its merits. Upon hearing here the government urged that Whirls was not dispositive of other veterans rights. This court disagreed with that contention and affirmed the order of dismissal in a *per curiam* on the ground that all issues had been adjudicated by the Supreme Court in the Whirls case, Trailmobile Co. v. International Union, C. I. O., 6 Cir., 162 F.2d 720. In the belief that the complaint in the present causes is designed to relitigate the issue of seniority rights there decided, Trailmobile moved the district court in each of the cases here involved, to dismiss the complaint therein on the ground of res adjudicata. The motions were granted and it is from the orders of dismissal that the appellants now prosecute their appeals.

The appellants contend that they presented to the court below by their complaint, issues which were not and could not have been decided in the Whirls case or were there expressly reserved. These issues arise from the alleged discharge of the appellants during the first full year of their reemployment. They contend that during that year they were deprived of ten years of seniority and by reason of such deprivation were refused their former positions, pay and other benefits; that their status was changed while they were in the service by a contract between the company and a new bargaining agency which did not represent them because they were not members of the C. I. O., and in any event that the contract was itself discriminatory. They urge that neither the Whirls case nor our decision in Trailmobile v. International Union, C. I. O., supra, operates to bar their claims as res adjudicata.

We address ourselves first to the issue in repect to seniority rights, since that was mainly argued orally and in briefs. Section 8(c) of the Selective Training and Service Act preserves to the reemployed veteran within the first year of his reemployment, such seniority as he would have had had he not been inducted into the armed services of the United States. The period of such service is to be construed as a furlough from his employment and not as a separation therefrom. The Whirls case holds that he is entitled to such seniority as he would have had had he remained at his post, but that he is entitled to no greater seniority than his fellow employees in comparable positions, and that to give him priority over the non-veteran employees of Highland would have afforded him super-seniority, which is not within either the purpose or terms of the section. Whatever doubt may have arisen from the extended discussion in the Whirls case in the light of the Fishgold case, has now been set at rest by the rationalization in Oakley v. Louisville & Nashville R. Co., 338 U.S. 278, 70 S.Ct. 119, 122. There it is said that the Fishgold case holds that a discharged veteran is entitled by the Act to be restored not to a position which would be the precise equivalent of that which he had left when he joined the armed forces, but rather to a position "which on the moving escalator of terms and conditions affecting that particular employment, would be comparable to the position which he would have held if he had remained continuously in his civilian employment." While the Trailmobile case dealt with the statutory protection given the veteran within the year of his restored position and protected him against loss by discharge without cause and against loss of other benefits within the year, the Oakley case

carries the matter one step further and holds that the expiration of the year does not terminate the veteran's right to seniority to which he was entitled, and does not open the door to discrimination against him *as a veteran*. "His seniority status secured by this statutory wording continues beyond the first year of his reemployment subject to the advantages and *limitations* applicable to the other employees." It is, of course, implicit in this that his seniority after the year is no greater than within it. It would seem, therefore, that if the collective agreement with the C. I. O. is a valid agreement binding upon the appellants, there was no discrimination against them, either as veterans or as members of the Highland Company labor force. The collective bargaining agreement applies to all Highland employees, veteran and non-veteran, and had the appellants remained at their posts they, like all other Highland men, would have dated their seniority from January 1, 1944. There is no allegation in the complaint that they had a status differing from non-veteran Highland men, and to now adjudicate them as having rights superior to the others would apply to them a super-seniority condemned in the Whirls case. This is, of course, upon the assumption that the collective bargaining agreement was not invalid.

The appellants, however, contend that the agreement is discriminatory in that the original Trailmobile working force were permitted to date their seniority rights from the date of employment while the Highland men were forced to accept a later date. Aeronautical Industrial District Lodge 727 v. Campbell, 337 U.S. 521, 69 S.Ct. 1287, tells us, however, that the date of employment is not, under the Act, an inflexible basis for determining seniority rights; that discriminations in the process of a collective bargaining agreement which is wholly unrelated to a veteran's absence in the service, is not forbidden by the Act, and that it would be an undue restriction on the process of collective bargaining to forbid changes in collective bargaining arrangements whereby veterans, as well as non-veterans, are benefited by promoting greater protection of their rights and smoother

operation of labor-management relations. Collective bargaining is a continuous process and a veteran becomes the beneficiary of those gains, the achievement of which is the constant thrust of collective bargaining. Collective bargaining agreements are made by a bargaining agent selected by a majority of the working force and are binding upon all employees. One who benefits as the result of such collective agreements must, in the language of the Oakley case, accept not only its advantages but its limitations.

It is true that in our opinion in the Whirls case we held that an employer may not, by a contract with a new collective bargaining agency, whittle down the statutory rights of an employee to seniority. The Supreme Court in reversing did not deal with that holding. It is undoubtedly sound where there is collusion between an employer and a bargaining agent in arriving at their collective bargaining agreement. Such was the decision in Wallace Corp. v. N. L. R. B., 323 U.S. 248, 65 S.Ct. 238, 89 L.Ed. 216, on a somewhat analagous issue. But the Supreme Court in Colgate-Palmolive-Peet Co., v. N. L. R. B., 338 U.S. 355, 70 S.Ct. 166, wherein the so-called Rutland Court doctrine was disapproved, attaches no such infirmity to collective bargaining agreements entered into in good faith, and permitted by law. It must be noted that the differing bases for computing seniority in the present case were not imported into the C. I. O. contract by Trailmobile, but were forced upon it even in the defiance of the original Union's national officers, by the over-whelming majority of the original Trailmobile employees.

While there was no discrimination in the C. I. O. contract against the appellants, either as veterans or as members of the Highland labor force, there still remains an aspect of discrimination as between the Highland men and the Trailmobile men in respect to seniority. But at the time of the consolidation both labor forces were affiliated with the A. F. of L. and the Highland group claimed seniority with Trailmobile as of the date of their employment by Highland. The Trailmobile

employees opposed this and the national representatives of the A. F. of L. supported the Highland men. Trailmobile employees were dissatisfied with the decision and outnumbered the Highland employees 10 to 1. Accordingly, they reorganized as a unit of the C. I. O. At an election the new C. I. O. Local was chosen as bargaining representative for the union of both groups and negotiated the contract of June 21, 1944. Trailmobile v. Whirls, supra. The C. I. O. Local filed a strike notice with the National Labor Relations Board and threatened to strike if any of the former employees of Highland, veteran or non-veteran, were given any place on the seniority list other than January 1, 1944. Trailmobile v. International Union, C. I. O., supra. This action was in undoubted response to the pressures of the Trailmobile men and to the very reason for the local's selection. Besides, Highland seniority was on a departmental basis, and they now came into not only a new department but into a new plant. They acquired a closed-shop agreement and other advantages of which all members of the combined labor force were beneficiaries. Whatever we might think of the fairness of the differentiation, the discrimination was in pursuance of the bargaining process and not without some basis, forestalled a strike and was therefore not invalid. Aeronautical Industrial District Lodge 727 v. Campbell, supra.

With respect to seniority rights we are also of the view that our decision in Trailmobile Co. v. International Union, C. I. O., supra, is res adjudicata of the claims of the appellants that their seniority rights are superior to those possessed by the non-veteran Highland men. But, while the doctrine applies not only to matters adjudicated in a previous decision, but likewise to those which might have been there adjudicated, an issue appears on the face of the pleadings to which the doctrine is not applicable. The complaint avers that the appellants were discharged within the first year of their employment. If so, and the discharges were without cause, they were unlawful and the appellants were not without remedy, if unable to raise the question in the declaratory judgment suit. The briefs do not in this help us. Our own exploration, however, discloses that the declaratory judgment suit, begun May 6, 1946, was decided May 31, 1946, with an opinion by the district judge reported in 67 F.Supp. 53. Appellant Britt, who had been reemployed January 2, 1946, was not discharged until November 23, 1946, and appellant Mappes, reemployed January 16, 1946, was likewise discharged November 23, 1946. Thus it appears that when the declaratory judgment suit was decided, neither appellant had been discharged, and their grievances in this respect could not have been presented to the court as an issue in that suit. Res adjudicata does not, therefore apply to these discharges if made without cause, and the appellants are entitled to a remedy.

It follows from what we have said that the orders of dismissal must be set aside and the causes remanded to the district court for a consideration of the grounds for discharge, and if found to have been made without cause, for the entry of judgments in the amount of wages and the value of other benefits lost, if any, during the remainder of the employment year following discharge.

Reversed, and remanded for trial in conformity herewith.